# United States Court of Appeals
## For the First Circuit

No. 18-1358

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN BRAVO-FERNÁNDEZ,

Defendant, Appellant.

No. 18-1370

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR MARTÍNEZ-MALDONADO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Martin G. Weinberg, with whom Kimberly Homan, were on brief, for appellant Bravo-Fernández.

Abbe David Lowell, with whom Christopher D. Man and Winston & Strawn LLP were on brief, for appellant Martínez-Maldonado.
Vijay Shanker, U.S. Department of Justice, Criminal Division, Appellate Section, with whom Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Peter M. Koski, Public Integrity Section, and Gwendolyn Amelia Stamper, Public Integrity Section, were on brief, for appellee.

January 17, 2019

**TORRUELLA**, **Circuit Judge**.  Because everything old is new again,[1] Defendants Juan Bravo-Fernández ("Bravo") and Héctor Martínez-Maldonado ("Martínez") come before us for a third time. See United States v. Bravo-Fernández, 790 F.3d 41 (1st Cir. 2015); United States v. Fernández, 722 F.3d 1 (1st Cir. 2013).  In this appeal, they seek to overturn their 2017 convictions for federal program bribery under 18 U.S.C. § 666, arguing primarily that evidence stipulated to early in the proceedings was insufficient to convict.

Among the elements of § 666, the government was required to establish that the entity Martínez represented as an agent, in this case the Commonwealth of Puerto Rico, received at least $10,000 in federal "benefits" within the meaning of that statute.  The government did not meet this burden.  Accordingly, we must reverse defendants' convictions for federal program bribery.

**I.**

The pertinent facts and procedural background are examined in detail in Bravo-Fernández, 790 F.3d at 43-45, and Fernández, 722 F.3d at 6-8, for which we only sketch a high-level overview of that account here.

---

[1]   Peter Allen, Everything Old Is New Again, in Continental American (A&M Records 1974).

This case traces its origin to 2010, when Bravo and Martínez were charged with federal program bribery in violation of § 666, among other things. The charges stemmed from payments that Bravo made in 2005 involving a trip to Las Vegas to which he invited Martínez, then a Puerto Rico senator. According to the government, Bravo used the trip to bribe Martínez in exchange for his support of pending legislation that would have favored Bravo's business, Ranger American, a local security company.

Bravo and Martínez were first tried and found guilty of federal program bribery in 2011, an outcome which they successfully challenged before this court. See Fernández, 722 F.3d at 6, 39. In that initial appeal, we ruled that § 666 only criminalizes bribery, not gratuities, and that the evidence presented at trial, together with the jury instructions, could have led the jury to improperly convict on either a "bribery" or "gratuity" theory. Id. 16-17, 23-26. Because it was insufficiently clear to discern which theory the jury relied on to reach its verdict, we vacated defendants' convictions on the § 666 counts and remanded for potential re-prosecution. Id. at 26-28, 39.

On remand, Bravo and Martínez moved for judgment of acquittal, arguing that double jeopardy barred their renewed prosecution. Bravo-Fernández, 790 F.3d at 43, 49. The district court rejected this contention, after which defendants sought

refuge before our court once again. Id. at 43. This time, however, defendants' appeal was unsuccessful and we affirmed the district court's decision on the double jeopardy issue. Id. Defendants' further appellate endeavor before the Supreme Court reached a similar result. See Bravo-Fernández v. United States, 137 S. Ct. 352 (2016).

Bravo and Martínez faced their second trial in May 2017, and once again a jury found them guilty of federal program bribery under § 666. Those proceedings devolved into the instant appeal, the latest stage in this case's arduous journey.

## II.

We are able to reduce the several questions that have been raised before us[2] to the only one that merits our decisional attention and mandates the outcome of this appeal: Whether the government introduced evidence at trial to satisfy the jurisdictional element under 18 U.S.C. § 666(b) that the government entity involved received "benefits in excess of $10,000 under a Federal program." (emphasis added). Where, as here, defendants have preserved a sufficiency challenge, we review de novo a

---

[2] Defendants also challenge, among other things, the sufficiency of the evidence other than that presented to satisfy the jurisdictional element, the propriety of the jury instructions, some of the district court's evidentiary rulings, and their sentences. Our decision on the sufficiency issue makes it unnecessary to reach the merits of such challenges.

-5-

district court's denial of their motion for judgment of acquittal. United States v. Acevedo-Hernández, 898 F.3d 150, 161 (1st Cir. 2018).

To maintain a conviction for federal program bribery, the government must prove beyond a reasonable doubt that the party receiving the bribe was an agent of an entity that "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."  18 U.S.C. § 666(b).  This requirement is often referred to as the "jurisdictional element" of § 666.  See, e.g., United States v. McLean, 802 F.3d 1228, 1240 (11th Cir. 2015).  And not all federal funds constitute "benefits" under the statute.  See Fischer v. United States, 529 U.S. 667, 681 (2000) ("Any receipt of federal funds can, at some level of generality, be characterized as a benefit.  The statute does not employ this broad, almost limitless use of the term."); see also United States v. Dubón-Otero, 292 F.3d 1, 7 n.7 (1st Cir. 2002) (acknowledging that there exists "compensation of the type excluded by § 666 (c)" including salaries, wages and expenses paid in the usual course of business). In Fischer, the Supreme Court explained that only federal monies that "promote[] well-being," such as those which provide individuals with "financial help in time of sickness, old age, or

-6-

unemployment," may qualify as "benefits." Fischer, 529 U.S. at 677 (citing Webster's Third New International Dictionary 204 (1971)). Critically, "[t]o determine whether an organization participating in a federal assistance program receives 'benefits,' an examination must be undertaken of the program's structure, operation, and purpose." Id. at 681. The government has the burden of producing adequate evidence for this examination to occur.

In resolving if the § 666(b) jurisdictional element was satisfied, we find it instructive to begin by comparing the evidence that the government offered on this key element during the 2011 trial with that it presented in the 2017 proceedings leading to this appeal.

At defendants' first trial, the government introduced evidence specifically tailored to establishing the § 666 jurisdictional requirement. An employee of the Puerto Rico Treasury Department testified for the government that "the Senate of Puerto Rico childcare program (known as the Food Program for the Care of Children and Adults) receive[d] funding from the Government of the United States." United States v. Bravo-Fernández, 828 F. Supp. 2d 441, 455 (D.P.R. 2011), rev'd in part, vacated in part sub nom. United States v. Fernández, 722 F.3d 1 (1st Cir. 2013). The witness further averred, with the support

of documentation also admitted into evidence, that the Puerto Rico Senate annually received around $20,000 in federal funds for the childcare program during the relevant period. Id. at 456. This provided the basis for the district court to conclude in its resolution of the Rule 29 motion for judgment of acquittal that "[t]he federal assistance received by the Senate of Puerto Rico for [its] childcare program clearly qualifies as a 'benefit' provided under a federal program" for purposes of § 666(b). Id.

In contrast, the record of the second trial is barren of evidence showing disbursement of federal "benefits" to the Senate of Puerto Rico or even to the Commonwealth as a whole. All we have is a stipulation the parties accorded prior to trial providing that "in fiscal year 2005[,] the Commonwealth of Puerto Rico received more than $10,000 in federal funding. Specifically, from October 1, 2004, to September 30, 2005, the Commonwealth of Puerto Rico received over $4.7 billion in federal funds." (emphasis added) Later, on the first day of trial during a conference about preliminary jury instructions, the district judge asked counsel whether this stipulation allowed him to inform jurors that the § 666 jurisdictional element had been met. Counsel for defendant Martínez responded that the court should not instruct so because "the . . . law . . . doesn't equate funds with benefits, and the statute says benefits. . . . We have stipulated to the amount of

-8-

money, but not that [the jurisdictional] element has been satisfied." Incredibly, this clear warning of things to come went unattended and the government proceeded to present its case in chief without introducing any evidence to cover this gaping hole in its case.

Following the close of the government's case, defendants made a Rule 29 motion for a verdict of acquittal in which they specifically argued that the government failed to establish the existence of $10,000 in benefits under a federal program. The district court denied this motion without explanation. In charging the jury, the district court stated that § 666 only required jurors to find that the Commonwealth received federal "funds of more than $10,000." No instruction was given on what constitutes a benefit, and the word "benefits" does not appear even once throughout the instructions. Counsel for defendant Martínez objected to the instruction's language, but that objection was summarily overruled by the district court.

Given the foregoing, and in keeping with our own precedent and that of the Supreme Court, we can only conclude that the government failed to meet its burden of establishing that the entity Martínez represented as an agent received the amount of benefits required under § 666(b). The government's arguments to the contrary are futile.

-9-

First, the government directs us to a paragraph in our 2013 opinion in Fernández, which examined defendants' 2011 trial and noted that:

> [D]uring 2005 -- the year of the charged conduct -- the Commonwealth received over $4.7 billion in federal funds. Because Martínez . . . [is an] agent[] of the Commonwealth, the evidence was sufficient to show that [he is an] agent[] of a "government . . . [that] receives, in any one year period, benefits in excess of $10,000 under a Federal program."

722 F.3d at 9 (quoting 18 U.S.C. § 666(b)). This statement that the jurisdictional element was satisfied in defendants' first trial, the government purports, should also control here because of the law of the case doctrine, which "bars a party from resurrecting issues that either were, or could have been, decided on an earlier appeal." United States v. Matthews, 643 F.3d 9, 12-13 (1st Cir. 2011) (citation omitted). But our statement in Fernández is not dispositive as it was neither essential to our holding there nor could the issue now before us have been decided in that initial appeal. Contrary to what the government contends, defendants did not argue about the funds-benefits distinction in their first appeal. See Brief for Appellant Bravo at 25-27, United States v. Fernández, 722 F.3d 1 (1st Cir. 2013)(No. 12-1289); Brief for Appellant Martínez at 25-28, United States v. Fernández, 722 F.3d 1 (1st Cir. 2013)(No. 12-1290). And they had no reason to do so because, as explained above, the government introduced

specific evidence at that first trial to establish the existence of the requisite amount of federal benefits.  The issue before us in that case was whether Martínez was an "agent" of the Commonwealth, not whether "benefits" as used in the statute were received.  Thus, the statement from Fernández the government relies on is nothing but dicta that "lack[s] any binding or preclusive effect."  Sexual Minorities Uganda v. Lively, 899 F.3d 24, 29 (1st Cir. 2018).

Second, the government contends that both the Supreme Court in Fischer and our decision in Dubón-Otero, 292 F.3d at 4, command an inquiry into the nature of federal funds to determine if they are benefits under § 666 only when the payments are disbursed "indirectly" to the receiving entity.  This argument is also without merit.  In fact, the one reference we made in Dubón-Otero to the distinction between entities that receive payments directly from the federal government and those that do not was that "[i]t makes no difference [whether an agency] received this money indirectly.  It is now well established that benefits under § 666 are not limited solely to primary target recipients or beneficiaries."  292 F.3d at 9 (citing United States v. Fischer, 168 F.3d 1273, 1278 (11th Cir. 1999) ("[T]he plain language of § 666(b) does not distinguish between an organization . . . that receives 'benefits' directly under a federal program and an

organization . . . that receives 'benefits' as an assignee under a federal program.")).  Indisputably, this language affords no credit to the government's theory.  Moreover, the reach of Fischer is not limited to only those cases involving indirect receipt of federal monies.  To the contrary, the Supreme Court's reasoning in Fischer, particularly its concern for the proper federal balance in this type of case, is by its very nature generally applicable.  See Fischer, 529 U.S. at 681.

In a final attempt to save a sinking ship, the government asserts that the stipulation specifying the amount of federal funds received by the Commonwealth was sufficient to satisfy the § 666 jurisdictional element.  The government takes the position that a "jury, exercising common sense and relying on general knowledge, can reasonably infer that the federal funds constituted 'benefits.'"  It is tempting to agree with the government here.  As judges who hear cases arising out of federal benefit programs and who are familiar with how such programs are funded, we are certain that there are federal benefit programs that provide far more than $10,000 to the Commonwealth and its instrumentalities.  The question remains, however, whether those programs are funded by the $4.7 billion in federal funds that go directly to the Commonwealth.  Perhaps the federal benefit programs enjoyed in Puerto Rico are financed through other federal monies, leaving the

$4.7 billion to be spent on infrastructure, salaries, and other expenditures that may or may not constitute "benefits" under Fischer?  In any event, we see nothing in the record that tells us whether any juror would certainly know the answer to these questions, nor did the government secure a stipulation supplying such answers.

It is unclear, too, where we would stop if we accept the government's invitation to rely on jurors' knowledge of federal funding to fill gaps in the government's proof.  Suppose the government puts in no evidence about any federal funds at all.  Could jurors simply fill-in the gap based on their "common sense" and "general knowledge" that large amounts of federal funds are sent to the Commonwealth government each year?

Under the government's approach, the jurisdictional element in many federal criminal cases could be satisfied by similar reliance on jurors' extra-record knowledge.  For example, one could claim that any juror would know that all banks are engaged in, or at least affect, interstate commerce, or that a bank is likely FDIC insured.  Yet, the failure to offer any actual proof of these relatively obvious jurisdictional facts has repeatedly proved fatal to criminal prosecutions.  See United States v. Leslie, 103 F.3d 1093, 1102-3 (2d Cir. 1997) (reversing conviction because government "did not provide even the slenderest

of threads" upon which to hang the interstate commerce jurisdictional element); United States v. Sliker, 751 F.2d 477, 484 (2d Cir. 1984) (affirming conviction based on oral testimony of FDIC-insured status, but warning the government of failure to "ask the simple question that would avoid the need for judicial consideration of what should be a non-problem"); see also United States v. Davis, 726 F.3d 357, 366-7 (2d Cir. 2013) (holding that the government had failed to meet its burden by assuming that a federal installation on federal land automatically came within federal jurisdiction, but affirming after taking judicial notice of the fact at the government's behest).

We have considered the Third Circuit's recent decision in United States v. Willis, 844 F.3d 155 (3d Cir. 2016), in which the government relied on proof that the Government of the Virgin Islands received $150 million in federal funds. The Willis court took a different route than that urged by the government in this case. Rather than relying on juror common sense, the court in Willis held that federal funds paid to a territorial government were a benefit to that government because they "significantly supported the government." Id. at 168. We do not see, though, how that type of financial support to a local government equates to a "benefit" of the type required by Fischer. As in this case, it does not appear that any federal program was specifically

identified in Willis, prohibiting the ability to determine, under Fischer's "benefits" analysis, whether the funds received by the Government of the Virgin Islands were used for such promotion of well-being.

Despite its insistence that the Fischer analysis need only be applied if it is "difficult" to determine whether the federal payments were benefits, the government seems blind to the fact that without reference to a specific federal program it is not only difficult but impossible to make such a determination. Again, the stipulation entered between the parties made no reference to "benefits" or, for that matter, to any federal program. The stipulation also did not provide information regarding the intended or actual use of any portion of the $4.7 billion in federal funds. It only provided that the "Commonwealth of Puerto Rico received over $4.7 billion in federal funds" during the relevant time period. Concluding that such a stipulation sufficed to satisfy the jurisdictional element would counter the plain language of § 666(b) requiring proof that the government entity involved received "benefits in excess of $10,000 under a Federal program." It would also contravene the government's burden to put forth evidence about the federal program's "structure, operation, and purpose" in order to make ascertainable whether an entity received "benefits" under § 666(b). Fischer,

-15-

529 U.S. at 681.  Most of our sister circuits to have addressed this issue agree.[3]  To hold otherwise and conclude that any receipt of federal funds is enough to satisfy the jurisdictional element would transmute § 666 into the general bribery statute that the Fischer court warned against and "upset[] the proper federal balance."  Id.

### III.

For the reasons explained above, we conclude that the government failed to establish an essential element of the crime it charged defendants with.  We need not go further and hereby **reverse** Bravo's and Martínez's § 666 convictions.  We direct the district court to enter a judgment of acquittal on both charges.

---

[3] See, e.g., United States v. Paixao, 885 F.3d 1203, 1206 (9th Cir. 2018) ("[N]ot all payments under federal programs qualify as 'benefits' . . . . [T]he inquiry turns on the attributes of the federal program[.]") (citation omitted); United States v. Pinson, 860 F.3d 152, 166 (4th Cir. 2017) ("Because any receipt of federal funds could 'at some level of generality' be characterized as a benefit, . . . the Court provided guidelines to distinguish between covered federal payments ('benefits') and non-covered payments."); United States v. McLean, 802 F.3d 1228, 1237 (11th Cir. 2015) ("[T]he government must prove beyond a reasonable doubt that the individual worked for an entit[y] which receive[d] . . . funds . . . in connection with programs defined by a sufficiently comprehensive structure, operation, and purpose to merit characterization of the funds as benefits under § 666(b)." (citation and internal quotation marks omitted)); United States v. Zyskind, 118 F.3d 113, 115 (2d. Cir. 1997) ("[T]here must exist a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives.") (quoting S. Rep. No. 98-225, at 370 (1983)).